# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| **LUXER CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**PACKAGE CONCIERGE, INC.,**<br><br>Defendant. | **Court No. 1:24-cv-00603-JCG** |

## OPINION AND ORDER

Plaintiff Luxer Corporation ("Plaintiff" or "Luxer") filed this case against Defendant Package Concierge, Inc. ("Defendant" or "Package Concierge") alleging infringement of U.S. Patent Number 11,625,675 ("'675 Patent") (D.I. 1-1). Compl. (D.I. 1). The Court dismissed the case on Defendant's motion to dismiss, concluding that the '675 Patent was not eligible for patent protection. Op. & Order (Feb. 6, 2025) (D.I. 39). Before the Court is Plaintiff's Motion for Indicative Ruling that the Court Would Enforce the Settlement Agreement Between Luxer Corp. and Quadient, Inc. on Remand. Pl.'s Mot. Indicative Ruling Ct. Enforce Settlement Agreement Between Pl. & Quadient Remand ("Plaintiff's Motion" or "Pl.'s Mot.") (D.I. 45); see Pl.'s Opening Br. Supp. Pl.'s Mot. Indicative Ruling Ct. Enforce Settlement Agreement Between Pl. & Quadient

Remand ("Pl.'s Br.") (D.I. 46).  For the following reasons, Plaintiff's Motion is denied.

## BACKGROUND

The Court assumes familiarity with its previous opinion and recites the facts relevant to its review of Plaintiff's Motion.  Op. & Order (Feb. 6, 2025) at 2–4.  Luxer filed its Complaint on May 20, 2024 alleging infringement of the '675 Patent.  Compl.  Defendant filed a motion to dismiss Plaintiff's claims on July 11, 2024.  Def.'s MTD Pursuant Fed. R. Civ. P. 12(b)(6) ("Defendant's Motion to Dismiss") (D.I. 15).

Luxor filed a letter on February 4, 2025, informing the Court that the Parties had "reached a settlement in principle, and that they intend[ed] to file a stipulation to dismiss this action once they agree to the details of the settlement agreement." Settlement Letter (Feb. 4, 2025) (D.I. 38).  The Parties did not request to withdraw the active proceeding, nor did they file a stipulation to dismiss.  Id.  The Court on February 6, 2025 entered an opinion and order granting Defendant's Motion to Dismiss and dismissing Plaintiff's Complaint.  Op. & Order (Feb. 6, 2025).  Judgment was entered in favor of Defendant on the same day.  Judgment (D.I. 40).

Plaintiff appealed the dismissal to the U.S. Court of Appeals for the Federal Circuit ("CAFC").  Notice Appeal (D.I. 42).  Plaintiff filed the current motion on April 9, 2025 asking the Court to find that the Parties entered into an enforceable

settlement agreement on February 4, 2025, indicate that it would vacate and modify the February 6, 2025 Opinion and Order and Judgment if the case were to be remanded by the CAFC, and award attorneys' fees and costs associated with Plaintiff's Motion. Pl.'s Mot. Defendant filed an opposition to Plaintiff's Motion on April 21, 2025. Def.'s Opp'n Br. Pl.'s Mot. Indicative Ruling ("Def.'s Resp.") (D.I. 47). Plaintiff filed a reply on April 28, 2025, in support of its Motion. Pl.'s Reply Supp. Mot. Indicative Ruling Ct. Enforce Settlement Agreement Between Luxer Corp. & Quadient, Inc. Remand (D.I. 50).

On May 14, 2025, the CAFC issued an order that the proceedings on appeal are stayed pending this Court's consideration of Plaintiff's Motion. Order (May 14, 2025), <u>Luxer, Corp. v. Quadient, Inc.</u>, Court No. 2025-1482 (Fed. Cir.); Pl.'s Letter (May 15, 2025) (D.I. 51).

## LEGAL STANDARD

A trial court is typically divested of jurisdiction over a case once an appeal is taken by the appellate court. <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982) (recognizing that once an appeal is filed, the district court loses jurisdiction over the aspects of the case involved in the appeal). Federal Rule of Civil Procedure 62.1 offers a narrow exception to this rule, providing that:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

>    (1)    defer considering the motion;
>
>    (2)    deny the motion; or
>
>    (3)    state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a).  When the district court indicates that it would grant the motion for relief, the court of appeals may remand at its discretion.  Fed. R. App. P. 12.1(b).

## DISCUSSION

### I.    Settlement Agreement

Plaintiff seeks an indicative ruling that the Court will enforce a purported settlement agreement entered into between the Parties prior to the Court's February 6, 2025 Opinion and Order dismissing this case.  Pl.'s Mot.; Pl.'s Br. at 8–12.  Defendant contends that there are no exceptional or extraordinary circumstances in this case warranting an indicative ruling on whether the Court would grant a motion to enforce the settlement agreement and, even if an indicative ruling were appropriate, no settlement agreement existed between the Parties.  Def.'s Resp. at 12–19.

Settlement is a judicially favored manner for resolving disputes and an agreement to settle, voluntarily entered into between the parties to a dispute, is

binding on those parties, even if not reduced to writing. Read v. Baker, 438 F. Supp. 732, 735 (D. Del. 1977). The Court has jurisdiction to enforce such a settlement agreement in cases currently pending before it. Liberate Techs., LLC v. Worldgate Commc'ns, Inc., 133 F. Supp. 2d 357, 358 (D. Del. 2001). In doing so, the Court must determine whether the settlement agreement is a valid contract. Id.

"Under Delaware law[,] a contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms." Continental Warranty, Inc. v. Warner, 108 F. Supp. 3d 250, 253 (D. Del. 2015) (quoting Rohm and Haas Elec. Materials, LLC v. Honeywell Int'l, Inc., 2009 WL 1033651, at *5 (D. Del. 2009) (alteration in original)). A settlement agreement is enforceable if it addresses all essential terms, even if some details remain open for negotiation. Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc., 589 F. Supp. 2d 457, 462–63 (D. Del. 2008) (citing Loppert v. WindsorTech, Inc., 865 A.2d 1282 (Del. Ct. Chancery 2004)). What constitutes an "essential term" differs from case to case and is dependent on what the parties to the dispute consider important. Id.

Plaintiff contends that the Parties reached agreement on all essential terms of settlement on February 4, 2025. Pl.'s Br. at 8–12. In support of its position, Plaintiff offers an email exchange of February 4, 2025 between counsel for

Plaintiff and Defendant.  Id. at 9–10.  In the emails, Defendant's counsel wrote, "I understand that Quadient has reached an agreement with Luxer's President.  We will pay Luxer $200k to settle both cases against Parcell [sic] Pending and Package Concierge, including a fully paid-up license for future sales.  Please send me a draft Settlement Agreement at your convenience.  We should also notify the Court.  Thank you."  Pl.'s Br. at 9; see Pl.'s Exh. 2 Parties' Emails (D.I. 46-2) at 6.  Plaintiff contends that this email indicates that the Parties had reached agreement on the essential terms of the settlement, including payment of a certain amount, dismissal of pending claims, and a release from future claims.  Pl.'s Br. at 9.  Defendant counters that the email is silent on the essential terms of an agreement, including the method and schedule for payment.  Def.'s Resp. at 15.  Defendant also argues that later emails by the Parties show that negotiations were ongoing.  Id. at 15–19.

　　　The Court finds as a matter of fact based on the totality of the evidence that not all essential elements of settlement were resolved before the February 6, 2025 Opinion and Order.  Notably, the Parties filed a joint letter on February 4, 2025 informing the Court that they had reached a settlement in principle but would in the future file a stipulation of dismissal after they reached agreement on the details of the settlement.  See Settlement Letter (Feb. 4, 2025) (informing the Court that the Parties had "reached a settlement in principle, and that they intend[ed] to file a

stipulation to dismiss this action once they agree to the details of the settlement agreement."). Thus, the Parties' communication to the Court on February 4, 2025 indicated that details of the settlement were still being negotiated and were not final. No stipulation of dismissal was filed with this Court prior to the Court's Opinion and Order of Dismissal issued on February 6, 2025.

In addition, during a call on February 4, 2025, Josh Middlebrooks, President of Luxer, and Benoît Berson, Chief Solutions Officer for Quadient, agreed that Quadient would pay Luxer $200,000 to resolve the current and potential future litigation. Pl.'s Br. at 5; Def.'s Resp. at 6; Decl. Josh Middlebrooks Supp. Pl.'s Mot. Enforce Settlement Agreement Between Luxer and Quadient ("Middlebrooks Decl.") ¶¶ 1, 4–6 (D.I. 46-1); Decl. Benoît Berson Supp. Quadient's Opp'n Luxer's Mot. Indicative Ruling ("Berson Decl.") ¶¶ 2, 6–8 (D.I. 48). Neither Middlebrooks nor Berson was acting as an attorney and both indicated in their respective declarations that the drafting of the settlement agreement was to be left for counsel. Middlebrooks Decl. ¶ 5; Berson Decl. ¶ 6. Berson expressed that:

> I confirmed that Quadient would pay an amount of $200,000 USD, and we determined that we would leave it to our respective attorneys to draft an adequate scope of this arrangement to resolve the dispute, including a potential license to Quadient for Luxer's patents related to the allegedly infringing products.

\* \* \*

> I made it clear to Mr. Middlebrooks that any agreement we may reach was subject to our respective legal team finalizing the details, including appropriate terms of release and license to that effect.

Berson Decl. ¶ 6.  Plaintiff provided a draft settlement agreement to Defendant on February 6, 2025 that included terms and details beyond those discussed during the February 4, 2025 call.  See Decl. Gerard P. Norton Supp. Defs.' Opp'n Luxer's Mot. Indicative Ruling (D.I. 49) at Exh. A ("Draft Settlement Agreement") (D.I. 49-1).  The declarations of Middlebrooks and Berson do not indicate that the scope of the license was discussed or agreed to during their February 4, 2025 call.  Middlebrooks Decl. ¶ 5 (describing the license as a "going-forward lease to Luxer's U.S. Patent No. 11,625,675"); Berson Decl. ¶ 6 ("we determined that we would leave it to our respective attorneys to draft an adequate scope of this arrangement to resolve the dispute, including a potential license to Quadient for Luxer's patents related to the allegedly infringing products.").  A contemporaneous email between counsel refers to the license as "a fully paid-up license for future sales."  Pl.'s Exh. 2 Parties' Emails at 6.  The Draft Settlement Agreement provides greater detail:

> Luxer hereby grants to Quadient and its Affiliates a fully paid-up, royalty free, non-exclusive license to practice the invention in the '675 Patent for the full term of the '675 Patent including, without limitation, the rights to make, have made, use, import, license, offer to sell, and sell the invention in the '675 Patent.

Draft Settlement Agreement at 2–3. The Draft Settlement Agreement also included details regarding the manner and timing of payment that were not addressed during the February 4, 2025 call. Id. at 1–2.

The language used by the Parties surrounding the Draft Settlement Agreement further illustrates that negotiations were ongoing as of February 4, 2025 and that the agreement terms were not finalized. Emails sent by counsel for both Parties on February 4, 2025 refer to a "draft" settlement agreement. Pl.'s Exh. 2 Parties' Emails at 6. Plaintiff's email of February 6, 2025 similarly refers to the settlement agreement as "proposed" and invited Defendant's comments on the language of the agreement. Id. at 5. The Parties' February 4, 2025 letter to the Court also described the settlement as "in principle" and expressed that the Parties would file a stipulation of dismissal "once they agree to the details of the settlement agreement." Settlement Letter. Defendant's email of February 18, 2025 further demonstrates that essential terms were not fully resolved through the Parties' oral agreement, noting concerns with the scope of the license as reflected in the draft settlement agreement. Pl.'s Exh. 2 Parties' Emails at 3–4; see also Berson Decl. ¶¶ 6, 10.

Upon consideration of the totality of the evidence, including the declarations of Middlebrooks and Berson, the draft settlement agreement, the contemporaneous emails of counsel, and the February 4, 2025 letter to the Court, the Court cannot

conclude that all essential terms were agreed upon and an enforceable settlement agreement existed prior to the February 6, 2025 Opinion and Order.  Thus, the Court's indicative ruling is that the Court would not enforce the settlement agreement on remand.  Plaintiff's Motion is denied.

## II. Jurisdiction to Dismiss

Plaintiff claims that the Court was divested of jurisdiction to enter judgment because the Parties notified the Court of settlement.  Pl.'s Br. at 12–13.  Defendant contends that no settlement agreement was reached by the Parties and that the notice to the Court indicated that finalizing the terms of settlement was a condition precedent to the Parties seeking dismissal.  Def.'s Resp. at 18–19.  As discussed above, the Court finds as a matter of fact based on the totality of evidence that an enforceable settlement agreement did not exist at the time judgment was entered on February 6, 2025.  Furthermore, the February 4, 2025 settlement letter was not sufficient to trigger the dismissal of this case.  Federal Rule of Civil Procedure 41 governs how a plaintiff may voluntarily dismiss a lawsuit, and it provides clear, structured pathways for doing so.  Fed. R. Civ. P. 41.  Under Rule 41(a)(1)(A)(i), a plaintiff may dismiss an action without a court order only by filing a notice of dismissal before the opposing party serves an answer or motion for summary judgment.  Fed. R. Civ. P. 41(a)(1)(A)(i).  If the complaint has been contested, Rule 41(a)(1)(A)(ii) allows voluntary dismissal only if all parties who have

appeared sign and file a stipulation of dismissal. Fed. R. Civ. P. 41(a)(1)(A)(ii). Except as provided by Rule 41(a)(1), an action may only be dismissed by a court order on terms the court considers proper. Fed. R. Civ. P. 41(a)(2).

Because Defendant had already appeared to contest Plaintiff's Complaint, dismissal of this case required a stipulation of dismissal signed by all Parties or an order of the Court. The Parties' letter of February 4, 2025 was not a stipulation of dismissal, clearly stating that such a stipulation would be filed at a later date once the details of the settlement were finalized. Settlement Letter. No stipulation of dismissal or motion requesting dismissal of the case was filed prior to the Court's February 6, 2025 Opinion and Order. Thus, Plaintiff failed to comply with the procedural mechanisms under Rule 41 for dismissal of its Complaint. The Court concludes that it properly exercised its authority in entering the February 6, 2025 Opinion and Order and the accompanying Judgment.

**III.   Attorneys' Fees**

Plaintiff seeks attorneys' fees and costs related to prosecuting its Motion. Pl.'s Br. at 20–21. Defendant argues that an award of attorneys' fees and costs is not warranted because Defendant has acted in good faith in challenging the legitimacy of the settlement agreement. Def.'s Resp. at 19–20. "Attorneys' fees and costs are not ordinarily recoverable and unless specifically authorized by statute are awarded only in extraordinary cases." Hobbs v. American Investors

Mgt., Inc., 576 F.2d 29, 35 n.18 (3d Cir. 1978).  The Court has "the authority to award attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Id.  Defendant was the prevailing party on Plaintiff's Motion and in this litigation.  Even if Defendant was the losing party on Plaintiff's Motion, the Court does not find its conduct in refusing to honor the purported settlement agreement to be in bad faith, vexatious, wanton, or for an oppressive reason.  The Court denies Plaintiff's request for attorneys' fees and costs.

## CONCLUSION

Upon consideration of Plaintiff's Motion for Indicative Ruling that the Court Would Enforce the Settlement Agreement Between Luxer Corp. and Quadient, Inc. on Remand (D.I. 45), Defendant's Opposition Brief to Plaintiff Luxer Corporation's Motion for Indicative Ruling (D.I. 47), Plaintiff's Reply in Support of its Motion for Indicative Ruling that the Court Would Enforce the Settlement Agreement between Luxer Corporation and Quadient, Inc. on Remand (D.I. 50), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's Motion for Indicative Ruling that the Court Would Enforce the Settlement Agreement Between Luxer Corp. and Quadient, Inc. on Remand (D.I. 45) is denied.

IT IS SO ORDERED this 30th day of June, 2025.

                                                                                                          /s/ Jennifer Choe-Groves
                                                                                                             Jennifer Choe-Groves
                                                                                     U.S. District Court Judge[*]

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.